Next case is 519-0142, J.I. Maxwell v. The Workers' Compensation Commission. I have... I have to say, it's really pretty... right now. Except we're going to be driving. With the snow like that, and if it were the 5th or 10th snow like this, I might not feel it right now. But you're going south. That's really amazing. We're going north. Yeah. Well, thank you. Counsel, you may proceed. I look forward to the appellate court's understanding of this issue. Because that's what we're going to talk about in the next hour of practice. So this is the Marion High School case. I'm going to use Mark Holt, or Tennessee Herald, which kind of represents Marion High School, who is the new appellant in this court. We are dealing with a wage potential issue in this case. There are certain stipulations that were made by the parties that I think are significant, that kind of frame the issues. Thirdly, there's no dispute that we have a wage potential case. Ms. Chatelain, when she came in to the jury, she heard her back. And thus we go back to 2008, with this court case, and this case has been around a while. And it led to a fusion. It led to common court restrictions. Marion High School couldn't accommodate it. There was no rehab. There was job placement. She found a job at SIU. She was applying for physiology working at SIU. So we do have a wage potential. We have, essentially, the agreed start date. It just differs to the amount that, you know, we're arguing about two numbers here, the upper wage bracket and the lower wage bracket. As to the upper wage bracket figure, I saved my breath. It's a purely notable question. Mr. Crossman and I agreed and stipulated to the underlying set of facts what she would make if she could return back to her PD position. And so that's not a dispute? Absolutely not. It's $68,388 over 185 days, which is 37 weeks. What we stipulated to in the contract is that if she could go back to work, that's what she would earn. My point being is the underlying facts are not a dispute. And 18-1 is the statute in question. Interpreting that statute as a question of law. Yet here we are. We have arbitrator Roe Selden, another court appearance here today, on February 17, reaching one conclusion as to what 18-1 means as to the upper wage bracket predicated on what stipulated set of facts. Then we get in front of the commission a 11-30-2017 decision. And I wish I could translate what the commission did in that opinion, but it's convoluted to say what it is. Nevertheless, you feel they erred in their calculations, right? Absolutely. We can hopefully agree that the commission erred. The idea is in their upper annual analysis. And then we get in front of Judge Gill down in Southern Illinois, and she comes up with yet a third proclamation or decision on what these underlying facts mean as measured by the CS4 language. From Judge Gill forward, we went back down to the commission, they followed her direction, entered the word that was described, and we went back up in front of Judge Gaffnett, same circuit court, and they appealed to this court. But that entire procedural history is under review. But now that we're here, can you tell us specifically how the commission erred and why they erred in their calculations? And what the correct calculation should be. I would argue that they didn't follow the law. There's been a lot of briefing that 18-1, if you look at the acquittment indecision, it says, once the claimant provides evidence of these amounts, the commission's function is to use the formula provided in Section 18-1 of the Act to calculate the amount of the wages. So the notion that somehow we can bring the average weekly wage balance of Section 10 into 18-1 is one of the claims that I think I provided adequately in the briefs. When we look at the statutory language, they could have said, you know, not the average amount that they would have earned in the prior occupation, they could have said, as determined in Section 10, or instead of saying the average amount, they could have said average weekly wage. So to me, the statutory language of 18-1 talks about this concept of full performance from the prior occupation. And the argument that I sold to Rhonda Rose Sullivan, and I believe is accurate, is full performance from Ms. Chapman is the actual contract salary that she got, which is the 68 grand figure. That's her earnings. That's what my client paid her. If she came back to work, that's what she would earn. That is full performance. Okay, so that's at the time of arbitration if she had that position at that time, right? Yes. Okay, so we know the time date when that figure... It's important. The question is, there was a prior formulation of 18-1 that talked about a retrospective look as we're going to look essentially at an average weekly wage in excess. But that essentially penalizes the worker. In this case, we have three, four years between the date of accident and the date of trial. So we look at the snapshot at the time of hearing as to what they could make in full performance. And Mr. Prosser and I see that there's no doubt that it was 68 grand exchange for the school year. And I think if you look at the statutory language, and you understand what Judge Gill did, she essentially put these section 10 concepts, which is that Washington district case. And this is not an average weekly wage, this is a wage differential case. So we start with the four corners of section 18-1, that stash court provision. And my basic contention was, and is, is that one of those elements correct that if you're going to do apples to apples, the apples to apples concept is full performance. And for this lady, Ms. Chapman, full performance for her and my client's job, is her salary. And I don't want to get lost, this is somehow, you know, this is a school teacher case, but there's going to be other workers out there, not just school teachers that have a contract. And the full performance is the staff needs to be stated, agreed upon, contract amount of the parties. At the time of hearing. Oh yeah, there's no doubt. Okay. So at the time of hearing, I mean, she got pay raises. She got up to $68. The dollar figure associated with the $9.30, which is $21,600, whereas the arbitrator used $28,800. And that's the monetary difference between nine hours and 12 hours. Can we get away from... Yeah, you have all the figures. I'm trying to simplify this. I'm a simple person. Okay. So are you in agreement between yourselves at this point that the tops, the salary at the time of hearing was X, and you both agree that it was X at the time of hearing? Okay. Right? Yes. Are we all in on that? $68,388. Okay. You're in agreement on that? Correct, Your Honor. So really the dispute now is the bottom figure. Am I correct? Or not? I think it's the top figure. It's the top figure also because, like I said, you know, it depends on the denominator. The reason we were here is Arbitrator Rose Sullivan took my argument that the $68,388 was full performance and that's what she earned on an annual basis. Right? Right. She used a 52-week denominator and came up with an upper wage bracket figure of $1,315. The commission does this bizarre thing where they say, oh, wait a minute, in the replacement job she's only working 32 weeks, so we have to somehow take this upper number and reduce it by 25%. So she got a pay decrease at the commission level from $68,388 to $51,291. And, you know, we both agree that's legal erroneous and it's contrary to the language of Section 81. So specifically, something that's a number, you urged 52-week denominator, not the 37-week denominator used by the commission. Is that part of the differences? And not the, well, I don't know what the denominator the commission used. I think it was 37. You reduced her by, I don't know, five weeks. They reduced her salary from $68 by 25% down to $51,000 and change. And then they took the lower number and multiplied that by a fraction of 37 over 32 weeks to come to $24,000. So they manipulated the upper and lower to come up with some constant week level of 37 weeks is what I think they were trying to do. To get that apples and apples. I think what they were trying to do was determine what her weekly wage was for the weeks she actually worked as compared to the weekly wage for the weeks she actually worked at SIU. And coming up with this weekly figure dividing one by 37, the other one by 32. I don't know. Is that what they did? And the difference between the two is what they were? Yeah. The problem is something like that. Who thinks? It's in the brief. It's in the kind of commission decisions there. I've read it many times. I've tried to figure out in reverse engineering what they did and why they tried to do it. This is all a result of the fact that the Act talks about weekly wages, right? The Act in Section 10 does. But not in Section 81. And the legal issue that you have, Mr. President, in particular, is bringing the concepts of Section 10 when you get into the first method, second method, third method, which is the Washington District case, and somehow translating them into 81 analysis, which I believe and I argue is legally incorrect. There's no hope. Let's take this down to 81, where it belongs. Thank you. So, he's received compensation for the duration of a disability subject to limitation followed by equal due from 66 and two-thirds percent of the difference between the average amount which she would have been able to earn in the full performance of her duties. Now, we understand that that salary in full performance at the time of the hearing is $68,388. We don't dispute that. For a 37-week work year. Is that correct? That's what she earned. That's what the stipulation was. So now, to figure out if you want to put this on a weekly basis, you would divide 68,388 by 37 and you'd get a weekly wage for the week she actually worked. And that would be in the full performance of her duties. But here's a problematic one. In the average amount which he is earning or is able to earn in some suitable employment. Now, we know what she was actually earning. But what was she able to earn? So, the first part that you talked about is the upper wage rate. Right. The able or able... Is the lower. Is the lower. And where that comes into play is responsible. I can put a counselor on the stand and say she's under-employed. Right. You know, nine hours versus the 12 hours which is a fine and a fab. And if the commission had said we find that she can only work nine hours because of that she wouldn't be... Well, they make a finding the fact that she's fully employed in her present condition of ill-being at nine hours. It's nine semester hours, right? I wouldn't have the math to sway this. I wouldn't be able to overcome that. Right. And Rose Sullivan did the opposite. She said, I agree with both that she can work the 12 semester hours. I agree with... She made a finding on that saying and that's how we got to that $28,000 figure versus 21 that if she could work the 12 semester hours times two semesters we get up to that $28,000 level. And my point and my grief is the commission never addressed what the factual finding was. They launched into this apples to apples argument. You know, criticized her for saying well, that's your personal choice for choosing nine hours versus 12 as opposed to saying it was a finding and fact. You know, we agree that it's 12 hours but we agree it's nine hours. And this goes to the relief. Well, what you're saying is in order to solve this problem the commission has to make a determination as to whether she is underemployed and is able to earn more than she is actually earning. Do they have to make that determination in order to solve this problem? Unfortunately, yes. In my briefs I argued that there's some way the Pell Court and their infinite power can get us around that so that we don't have to back down. No, I mean, but the problem is they're going to make the choice to finding you right. They have to make the choice. So you're saying to summarize it simply that this decision cannot stand because they never made the proper finding of fact for the lower level figure? Yes. Is that your position? As for the lower level, essentially. We don't have to go any further beyond that because everything else, if you don't have the right points, then the outcome is doomed from the start. Well, there's two points. There's the lower bracket figure. We don't have the right points in my opinion. We're right, okay. There's the upper bracket. We have a stipulated set of facts. We have statute. There's no other, it's a pure legal interpretation. It's a pure question of law. And we have three different opinions as to this point. I cite in my brief, I think it's section 19.1 where it says if the California is going to reverse the commission and the underlying facts are not in dispute, do you have the authority to declare it? Well, we have that by Supreme Court rule too. We can make any decision that the circuit court should make. So that begs the question of what should you do? And the bottom line is, this is the upper weight bracket, I think when you talk about the statutory language and the concept of what the usual in custody line of employment was and the average amount she was able to earn in full performance is at $68,000. But there's no evidence that she earned more than that, but somehow it was clear that she would get a greater sum than $68,000. That's full performance, and if we're going to do apples and apples, full performance means a denominator of 52 weeks. So what I'm ultimately seeking is that you tell the court to declare the  lower   the upper bracket. It's just as easier to compute the thing by determining you've got 68, 388 for your upper bracket. Now they have to determine what the lower bracket is. Okay? So you take that lower bracket that they determined and subtract that from the upper bracket, and then divide the difference by 52, and pay it out by the week. But you're saying the lower bracket is erroneously determined. It's erroneously determined. It's got to go back for determination as the lower bracket. But you would like as finding as a matter of law that X figure is under as a matter of law, the proper figure for the upper bracket? Yes. Okay. Good. You've been waiting. But we're going to get counsel. We can try to utilize this a bit. You'll have time and reply. Okay. Thank you. You may respond. I'm a little confused here, because I don't know what's going on here. You want to compare the 37 weeks she worked and reduce that to a weekly wage and then determine how much she is earning or could earn for the number of weeks she was to work at SIU and reduce that to a weekly wage and compare those two figures. Is that ultimately what you want? That's what the correct is. But here's the problem I have. The whole purpose of this act is to make the injured employee whole. Now, if the injured employee I'm a simpler guy than he is, so I've got to use real simple figures. If an employee earns $70,000 a year and works 35 weeks and he takes and is injured and he takes a job that works 25 weeks and he earns $20,000. Right? He's lost $50,000. That's the difference. He's lost $50,000. So the weeks now, how do you pay an award? You pay a $50,000 award by dividing it by 52 weeks. And you make him whole. Go ahead. I understand what you're saying. I don't know what you're saying. You were talking about the numbers in the tax program. You said that the number of people who have an income is not equal  the number of people who have an income. And the number of people who have an income is not equal to the number of people of people who have           income an income is not  to the number of